# UNITED STATES DISTRICT COURT

for the
Western District of Texas

FILED
July 22, 2021
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____kkc_____
DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 1:21-mj-582-SH
4404 Glomar Ave., Austin, TX 78721 )
)
)

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Please see Attachment A

located in the **Western** District of **Texas**, there is now concealed *(identify the person or describe the property to be seized)*:
Please see Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code Sections 841(a)(1) and 846 | Conspiracy to distribute narcotics and possession with intent to distribute narcotics. |

The application is based on these facts:
Please see Affidavit

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Justin Robbins*
Applicant's signature

DEA Task Force Officer Justin Robbins
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Phone *(specify reliable electronic means)*.

Date: 07/22/2021

Judge's signature

City and state: Austin, TX

U.S. Magistrate Susan Hightower
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **In the Matter of the Search of** § <br> **the Properties Located at:** § <br> § <br> **4404 Glomar Ave., Austin, TX 78721** § <br> **including all Structures, Improvements,** § <br> **and Vehicles Located on the Premises** § <br> **or Curtilage Thereof:** § <br> § | Case No. 1:21-mj-582-SH <br><br> **(UNDER SEAL)** |

**AFFIDAVIT UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Justin Robbins, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as **4404 Glomar Ave., Austin, TX 78721**, hereinafter "PREMISES" or "Target Location," further described in Attachment A, for the things described in Attachment B.

2. I am a Police Officer, duly appointed according to law and acting as such, and have been employed by the Georgetown Police Department since October of 2003. Since 2016, I have been assigned to the Drug Enforcement Administration (DEA) as a Task Force Officer, and am currently assigned to the Drug Enforcement Administration (DEA) Austin, High Intensity Drug Trafficking Area (HIDTA), Group, D63. I have been assigned to investigate various violations of federal law, to include but not limited to, the investigation of narcotics, organized crime, and money laundering offenses. By virtue of my assignment to the DEA, I am currently authorized to conduct investigations into violations of the Controlled Substances Act (Title 21, United States Code, Section 801 et seq.) and other federal laws concerning drug supply and drug demand.

3. I have received extensive training in the investigation of narcotics trafficking offenses, including but not limited to, the means and methods used by traffickers in importing, storing and distributing controlled substances, interdiction, smuggling methods and conveyances, methods of operations to include the use of coded language by drug traffickers, and the concealment and laundering of proceeds of illicit drug trafficking. I have participated in numerous narcotics investigations, I have participated in all aspects of drug investigations, including but not limited to conducting surveillance, executing search warrants, analyzing information obtained from court ordered pen registers and trap and trace intercepts, analyzing telephone toll information obtained as a result of subpoenas issued by the DEA, and conducting court authorized Title III wire, oral, and electronic communication intercepts.

4. Based on my training and experience, I am familiar with the use of confidential informants and sources in narcotics investigations, and have debriefed or participated in the debriefing of dozens of defendants, informants, and witnesses who had personal knowledge regarding narcotics trafficking organizations.

5. Based on my training and experience, I am familiar with the manner in which illegal drugs are transported, stored, and distributed and the methods of payments for such drugs. I am also familiar with the methods by which narcotics traffickers communicate and the code words commonly used by narcotics traffickers.

6. I have personally participated in the investigation set forth below, and am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other agents of the DEA, Austin Police Department (APD), and the San Marcos Police Department; and from my review of records and reports relating to the investigation. This

affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## OFFENSES

7. The following are the federal narcotics violations to be described in this affidavit, hereafter referred to as the "Target Offenses."

8. Title 18, United States Code, Section 841(a)(1) – Distributing, dispensing, or possessing with intent to distribute or dispense a controlled substance.

9. Title 18, United States Code, Section 846 – Conspiracy to distribute, dispense, or possess with intent to distribute or dispense a controlled substance.

10. The suspect has been identified as Earl LOFTON. The Target Location or premises to be searched is LOFTON's residence at **4404 Glomar Ave., Austin, TX 78721.**

## PROBABLE CAUSE

11. This investigation concerns multiple sales of narcotics that occurred between 2019 and July 12, 2021. As described below, information provided by law enforcement officers, confidential informants, audio surveillance tapes, and information contained in multiple law enforcement reports has revealed that Earl LOFTON participated in the narcotics transactions described below. The investigation has also revealed that there is probable cause to believe that evidence of the Target Offenses will be found within the Target Location. Multiple transactions in which LOFTON participated occurred within the Western District of Texas.

**Background of the Investigation**

12.     In 2019, while intercepting a Title III wiretap of a known dealer in narcotics, officers from the San Marcos Police Department and DEA agents observed Earl LOFTON deliver approximately six (6) ounces of suspected cocaine to the target of the investigation in Kyle, Texas. In addition, during its Title III surveillance of the dealer, the San Marcos Police Department and DEA observed the target of the Title III purchase cocaine from LOFTON at his residence multiple times. LOFTON was not prosecuted as part of that federal investigation.

13.     According to NCIC, LOFTON has a conviction for Unlawful Carrying of a Weapon in 1991, Possession of a Controlled Substance in 2003, Distribution of Marijuana in 2003, and Manufacture and Delivery of a controlled substance in 2003.

14.     By December 2020, the subject of the 2019 investigation had become a confidential source (CS) working with federal law enforcement to work off pending State charges involving his relations. The CS has been found to be reliable and credible with all provided information verified by your affiant. The information from the CS has been corroborated through other operations involving the purchase of narcotics from various targets.

15.     In December 2020, the CS met with detectives from the San Marcos Police Department and Task Force Officers of the DEA, including your affiant, for a debrief interview. The CS reported that LOFTON was selling large quantities of cocaine in and around the Austin, Texas area. The CS provided the phone number for LOFTON: 512-740-9068. The officers confirmed that this was the same LOFTON who had been observed selling cocaine to the CS in 2019. The CS also reported that on one occasion, he had purchased up to one (1) kilogram of cocaine from LOFTON. According to the CS, LOFTON would, at times, deliver the cocaine to

the CS's residence; at other times, he would have the CS come to LOFTON's house to purchase the cocaine there.

16. From June 2021 through July of 2021, law enforcement officers twice arranged for the CS to purchase cocaine from LOFTON:

17. First, between June 1 and 6, 2021, the CS contacted LOFTON to arrange to purchase cocaine. LOFTON agreed to sell the CS approximately nine (9) ounces of cocaine. Initially, LOFTON instructed the CS to meet him by an unidentified storage building by a Wal-Mart; once the CS and law enforcement (supervising the controlled buy) were en route, LOFTON contacted the CS again and redirected them to a storage facility across town from the initial location in Manor, TX. Investigating officers confirmed that LOFTEN rented a storage unit at this location, but their surveillance of the unit while LOFTON met with the CS indicated it was likely used for equipment storage only. The CS wore both a video and audio recording device, but the video was unclear. I and other officers observed the CS purchase the nine (9) ounces of suspected cocaine for approximately $8,500. The CS was searched for money and contraband both prior to and following the controlled buy, but none was found with the exception of the suspected cocaine purchased with DEA funds. No field test was done of the cocaine, but based on my training and experience, as well as the communications between the CS and LOFTON, I determined that the substance purchased by the CS was likely cocaine.

18. In addition, during the afternoon of July 7, 2021, I observed LOFTON arrive in his black Dodge pick-up truck at the Target Location. On July 19, 2021, I conducted a search of the Travis County Appraisal District Website and determined that the Target Location (4404 Glomar Ave., Austin, TX, 78721) was a residence owned by Earl LOFTON. Over the past two weeks, I

have observed LOFTON'S Dodge truck at the Target Location. The truck was also on scene during the first controlled buy in Manor, TX. Based on the TX Temporary Tag #13162V5 seen on the vehicle, the registered owner of the target vehicle is Earl LOFTEN.

19.     Second, in July 2021, officers arranged for another controlled buy. On July 12, 2021, the CS contacted LOFTON again, this time arranging to purchase four (4) ounces of cocaine. Prior to the controlled buy, I monitored a phone call placed by the CS to the source. During the call, LOFTON indicated that he had believed the CS would be purchasing nine (9) ounces of cocaine not four (4). LOFTON instructed the CS go to LOFTON'S residence, 4404 Glomar Ave., Austin, TX, so that they could work it out. The CS purchased the four (4) ounces of suspected cocaine (no field test was done), while being monitored by myself and other DEA agents. When the CS returned to the agents, the CS reported that there had been another individual inside LOFTON's residence who was waiting to purchase cocaine from LOFTON. Agents surveilling LOFTON's residence after the controlled buy verified that an unidentified male left the residence in a blue/green pick-up truck after the CS left.

20.     During the operation, law enforcement also observed a black male sitting on the porch of LOFTON's residence. He appeared to be monitoring the neighborhood. The male was identified through Austin PD records as Armini HOUSTON. HOUSTON has convictions for drug arrests and unlawful carrying of a firearm. HOUSTON was also arrested on July 7, 2021 by Austin PD for possession of a firearm.

21.     This investigation continues.  Based on my training and experience and the evidence gathered over the approximately 5 month investigation, I believe that the conspiracy to

distribute narcotics is ongoing. In addition, I believe that LOFTON uses the Target Residence to stash cocaine and packaging materials.

22. For the foregoing reasons, there is probable cause to believe that the premises identified above, which are more particularly identified in Attachment A, contain evidence relevant to violations of federal law, including Title 18, United States Code, Sections 841 and 846, which evidence is more particularly described in Attachment B.

23. Accordingly, I respectfully request that a search warrant be issued for the premises identified in Attachment A, including the subject premises, the curtilage thereof, and all structures or vehicles on or associated with such premises, authorizing the search and seizure of the items listed in Attachment B. Because there is probable cause to believe that such evidence may be contained in containers or electronic storage devices, this warrant seeks authorization to search any such container or device for the items described herein.

24. Based on my training, experience, and participation in this investigation and other investigations involving drug trafficking organizations, I believe there is probable cause to believe that information concerning LOFTON's cocaine sales and/or money laundering activities will be found in the Target Residence because:

   a. That members of drug trafficking organizations often maintain books, records, receipts, notes, ledgers, letters, telephones, computers with hard drive and media storage devices, mobile telephones, money orders, photographs, and other papers relating to the transportation, ordering, sale, and distribution of controlled substances; that illicit drug traffickers commonly "front" (provide on consignment) controlled substances to their customers; and that the aforementioned books,

records, letters, computers with hard drive and media storage devices, mobile telephones, receipts, notes, ledgers, etc. are maintained where the illicit drugs traffickers have ready access to them. These individuals usually maintain such records on their person, in their motor vehicles, in their residences, and/or in their place of illegal business;

b. That persons who traffic in controlled substances, like any other person, maintain documents and records. These documents and records will normally be retained for long periods of time regardless of whether their value to the individual has diminished. Often, this type of evidence is generated, maintained, and subsequently forgotten. Hence, documents that one would normally think a prudent person would destroy because of the incriminating nature of the documents are kept. It is also my experience that the larger, more complex a continuing criminal enterprise is, the more documentary evidence is generated during the course of its commission. These individuals usually maintain records on their person, in their motor vehicles, in their residences, and/or in their place of illegal business;

c. That in addition to marijuana, cocaine, methamphetamine, fentanyl, and other illegal and/or controlled substances, drug traffickers usually keep paraphernalia for manufacturing, cutting, packaging, weighing, and distributing their drugs, and for the collection, packaging, counting, and shipment of drug proceeds. This paraphernalia includes, but is not limited to, scales, plastic bags, rubber gloves, heat sealers, rubber bands, and vacuum sealers;

    d. That individuals who deal in illegal controlled substances often arm themselves with handguns, rifles, shotguns, automatic pistols and rifles, and other weaponry to protect themselves and their illegal controlled substances from theft, robbery, law enforcement authorities, and further to protect their illegal profits gained from the sale of illegal controlled substances. These individuals usually maintain these weapons on their person, in their motor vehicles, in their residences, and/or their place of illegal business;

    e. And that drug traffickers commonly utilize mobile telephones to communicate with drug suppliers and customers, as well as, store telephone numbers for coconspirators and photographs of drug evidence and bulk currency, and store, retain and record such information on the mobile telephones.

25. Based on my training and experience, I know that people engaged in criminal activity, like the general public, are often in possession of cellular communication and other electronic storage devices, with which they maintain associations and plan and facilitate their activities. In the case of criminal actors, such devices are likely to contain evidence of criminal association, criminal conduct, and coordination between co-conspirators. Affiant knows that drug traffickers often plan, coordinate, communicate, and otherwise facilitate their illegal activities using electronic storage devices, including cellular telephones. Moreover, such devices often contain or can lead to evidence of where the device was physically located at various times. Such evidence is relevant because it can corroborate a person's involvement in a criminal offense as well as the statements of informants. As stated above, such items are generally retained for long periods of time and are typically found in the person's actual possession, or in their residences, buildings, or vehicles to which the person has access or over which the person has control. Based

on my knowledge of this investigation, including review of toll records and recorded phone calls involving and between members of the drug trafficking organization, I know that the suspect named in this case, routinely uses such devices to facilitate his activities, including criminal activities.

26. I submit that if a computer or storage medium is found on the PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

   b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

   c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer

has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

27. As a result, the affiant seeks permission to search for records that might be found in the Target Location, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

28. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction:

a.  *The time required for an examination.* As noted above, not all evidence takes the form of documents and files that can be easily viewed on site.  Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence.  Storage media can store a large volume of information.  Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b.  *Technical requirements.*  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

29.  *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including computer-assisted scans, that might

expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

I submit that this affidavit supports probable cause for a warrant to search the PREMISES described in Attachment A and seize the items described in Attachment B.

Respectfully submitted,

Justin Robbins
Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed before me on July ___22___, 2021.

Susan Hightower
United States Magistrate Judge
Western District of Texas

## ATTACHMENT A

### PROPERTIES TO BE SEARCHED

**Target Location :**

The property and premises is located in the Western District of Texas, at **4404 Glomar Ave., Austin, TX 78721**, and includes all vehicles, structures, and improvements located on the curtilage thereof.

**4404 Glomar Ave., Austin, TX 78721** is currently owned by Earl LOFTEN and is legally identified as: LOT 15, BLK A Flournoy Heights, Sec 2. The residence is a blue in color single family residence with brown trim on the front, a dark gray shingle roof, and an open porch that extends half of the length of the front of the house. The residence has a blue front door with a window pane in the top portion.

Pictures of the Target Location are below:





## ATTACHMENT B

### ITEMS TO BE SEIZED

1. Illegal Controlled Substances;

2. All documents, whether physical or electronic, referencing or related to the acquisition, possession, or disposition of controlled substances, including but not limited to: photographs, inventories, ledgers, bills of sale, records, receipts, letters, emails, call logs, contact lists, text messages, electronic communications, or notes.

3. Indicia of occupancy, residency, control, and/or ownership of the premises and vehicles, and/or of premises, storage/rental units, and vehicles yet unknown;

4. Financial records in the form of bank records/documents, tax returns, money orders, business and/or personal checks, cashier's checks, deposit slips, and/or bank statements to accounts associated with known members of the drug trafficking organization, which could provide monetary evidence of possession and use of controlled substances in relation to the **Target Offenses**.

5. Any computers, laptops, tablets, mobile telephones, or other digital media storage devices found on the premises.

6. Any documents, physical or electronic, that identify aiders, abettors, co-conspirators, or facilitators of acquisition, possession, or disposition of controlled substances.

7. Currency related to or derived from the acquisition and/or disposition of controlled substances.

8. Books, records, receipts, notes, ledgers, bank records, money orders and/or other papers relating to the transportation, ordering, sale, importation, manufacture, and/or distribution of illegal controlled substances or records relating to the receipt and/or disposition of the proceeds from the distribution of illegal controlled substances and other illegal activity:

9. Currency, financial instruments, and/or other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring,

laundering, secreting or spending large sums of money made from engaging in illegal controlled substances activities and other illegal activity;

10. Photographs and/or videotapes of individuals engaged in activities related to the Target Offenses, property used in relation to the Target Offenses, and illegal controlled substances;

11. Material used in the packaging, cutting, weighing, and distribution of illegal controlled substances;

12. Vehicles utilized by members of the drug trafficking organization and co-conspirators to facilitate the transportation, storage and distribution of illegal controlled substances, or taken as payment for illegal drug debts, or held as collateral for the payment of illegal drug debts.

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means       ☐ Original       ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Western District of Texas

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>4404 Glomar Ave., Austin, TX 78721 | Case No. 1:21-mj-582-SH |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the   Western   District of   Texas
*(identify the person or describe the property to be searched and give its location)*:
   Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
   Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before   August 1, 2021   *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   the Hon. Susan Hightower   .
                                                                              *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
   ☐ for ___ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of   _____   .

Date and time issued:   07/22/2021 10:43 am                          *signature*
                                                                    *Judge's signature*

City and state:   Austin, TX                                        U.S. Magistrate Susan Hightower
                                                                    *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: <br> 1:21-mj-582-SH | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

  I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

                         _____
                               *Executing officer's signature*

                        _____
                               *Printed name and title*

**Print**     **Save As...**                      **Reset**